**WINEGAR, WILHELM, GLYNN & ROEMERSMA, P.C.**
305 Roseberry Street
P.O. Box 800
Phillipsburg, NJ 08865
Phone - (908) 454-3200
Fax - (908)454-3322
BarbR@wwgrlaw.com
Former Attorneys for Debtor

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| | : | |
| **In Re: Gary Morrison & Michele Morrison** | : | **Case No. 14-13436 (CMG)** |
| | : | |

## CERTIFICATION OF SCOTT M. WILHELM, ESQ., IN OPPOSITION TO DEBTORS' MOTION TO DISGORGE ATTORNEY FEES

I, Scott M. Wilhelm, Esq., hereby certify as follows:

1.      I am an Attorney-at-Law of the State of New Jersey admitted to the practice of law before the United States Bankruptcy Court for the District of New Jersey. I make this Certification in opposition to the Debtors' Motion to Disgorge Attorney Fees which they paid me. I do not take any position on that part of the Debtors' Motion which seeks to convert their case from Chapter 7 to Chapter 13. See ECF document #26.

2.      I have read the April 9, 2014 Certification that has been submitted by the Debtors in support of their Motion to Disgorge Attorneys Fees. Because the Debtors' Certification contains material misrepresentations of what occurred during the course of my representation of them, I am compelled to respond. Further, because the Debtors have challenged my legal ability and have made allegations of unethical conduct, I construe their Certification as an express waiver of the attorney-client privilege which does not prohibit me from disclosing confidential communications between me and the Debtors.

3.     On December 11, 2012, I spoke with Michele Morrison via the telephone for an initial consultation in regards to the possibility of filing bankruptcy. I took notes of that conversation. On that date, Mrs. Morrison advised me that she was not employed; that her husband was employed as a sheet metal fabricator who earned $80,000.00, per annum; that they jointly owned a home worth $200,000.00, which was encumbered by a $175,000.00 mortgage that was currently paid and which they intended to keep; that all five of their children lived with them (ages 29, 26, 23, 21 & 13); that the twenty-one (21) year-old child was in college and that the three (3) eldest children neither worked nor contributed to the household income. Mrs. Morrison also informed me that Mr. Morrison (or they jointly) owned a sheet metal limited liability company (LLC) which did not have any income. Mrs. Morrison also told me that she and her husband owned and maintained five (5) vehicles and that none of the adult children who drove three (3) of the vehicles contributed toward the maintenance of the vehicles. Mrs. Morrison also informed me that they had approximately $42,000.00, in credit card debt. She never mentioned owning any substantial assets other than her home.

4.     Based upon the preceding information, I advised Mrs. Morrison that she and her husband would qualify for a Chapter 7 bankruptcy, but that their family size would only be four (4) as the three (3) adult children who neither were employed nor were contributing to the household income would not be considered in determining family size and median income under the bankruptcy law.

5.     On December 12, 2012, I mailed to Mrs. Morrison a packet of information to be completed and quoted a legal fee of $1,294.00, plus a $306.00 filing fee.

6.      I did not hear from Mrs. Morrison again until November 4, 2013, when she scheduled an appointment at my office. She and I discussed her financial situation again which was consistent with what she had told me via the telephone on December 11, 2012. However, I did get some additional information from Mrs. Morrison at this meeting. Specifically, I discussed the issue of the exemption of assets as it relates to the five (5) vehicles they owned. At that time, I learned that all of the vehicles were between ten (10) and twenty-five (25) years-old and that all of the vehicles had more than 130,000 miles on them. Therefore, I explained to her that I believed the vehicles were of no value to a Chapter 7 Trustee and that the Trustee would not seize the non-exempt vehicles because the vehicles would not produce any meaningful dividend for unsecured creditors. Further, because the Debtors jointly owned their home and the estimated equity was only $25,000.00, I advised Mrs. Morrison that the homestead exemption under 11 U.S.C. §522(d)(1) protected their interest in their residence. At this time, Mrs. Morrison again stated that their LLC did not have any income and consisted of some miscellaneous equipment which she asserted was of minimal value. We also discussed the differences between a Chapter 7 and a Chapter 13 bankruptcy case.

7.      Based upon the preceding consultation and because a Chapter 7 was more beneficial to the Debtors, we agreed to file a Chapter 7 bankruptcy petition, knowing that we could convert to Chapter 13 if necessary. Over the following months, the Debtors completed the bankruptcy information packet and provided me with the supporting documentation to file the bankruptcy petition. They also paid the $1,294.00 attorney fee and the $306.00 filing fee.

8.      When the Morrisons returned the bankruptcy packet, on the asset sheets, the Morrisons listed their assets as consisting only of motor vehicles, boats, clothing and

household goods and furnishings. Even though the Morrisons were provided with a list of thirty-five (35) types of assets which they may have, they only listed the four (4) preceding items of personalty. Of course, this was not a true statement of their assets. They failed to list their ownership of three (3) bank accounts, a term life insurance policy, jewelry, collectibles, an IRA, office equipment and machinery/equipment owned by their LLC. All of these omitted assets were discovered by my paralegal's inquiries of Mrs. Morrison during her preparation of the petition in the software program. Therefore, the Morrisons initial disclosure of assets to me was not forthcoming.

     9.     On February 21, 2014, I met with the Morrisons at my office to review what, purportedly, was a completed Chapter 7 bankruptcy petition. At that meeting, I reviewed the Petition, all of the schedules and related documents with the Morrisons who signed the appropriate pages and verifyied their accuracy. One of the things we discussed was the value of their LLC. At that time, they advised me that the LLC did not have any value because it ran a deficit and because all of the equipment was titled in their individual names. In support of their assertion that the LLC did not have any income, Mrs. Morisson provided me a hand-written Income/Loss statement which illustrated a $5,680.00 loss as of October 31, 2013, as evidenced by exhibit "A" attached hereto. Based upon this document and based upon the Debtors' claim that the LLC did not own any assets, the business was listed on Schedule B, line 13 as having a value of only $1.00. On Schedule B, line 29, the Debtors' individual interest in machinery, fixtures and equipment which they used in the LLC was valued at $47,200.00, based upon their calculations. See exhibit "B" attached hereto.

     10.     Significantly, when I explained to the Morrisons that there was an insufficient amount of statutory exemptions available to exempt all of the machinery, fixtures and

equipment, the Morrisons understood that the items could be taken by the Trustee. However, the Morrisons expressed to me that they were not concerned because they believed their valuation of the machinery, fixtures and equipment was generous and that the items were likely worth less given the age and the quality of the same. They also advised me that in or order for the items to have any true re-sale value, all of the items would need to be sold as a collective unit and that each item individually was of inconsequential value.

11.    After the Petition was filed on February 27, 2014, and the $306.00 filing fee was paid, it was flagged as a potential asset case by the case Trustee. Once I received notice of the Trustee's position which was placed on the docket on March 8, 2014 (See ECF document #14), I scheduled the Debtors to meet with me to discuss the significance of the designation of an asset case.

12.    On March 13, 2014, I met with the Debtors at my office to discuss the non-exempt equity in the business machinery and equipment. During that meeting, for the first time, the Debtors advised me that Mr. Morrison had an active workers' compensation case and that he had some type of non-competition agreement with his current employer. Yet, even though he actively was collecting workers' compensation benefits and was not supposed to compete with his employer, the Morrisons advised me that they needed all of the fabricating machinery and equipment for self-employment. I informed the Morrisons that the workers' compensation claim was a potential asset of the bankruptcy estate which needed to be listed on Schedule B. I told the Debtors that I would be filing an amended Schedule B to list the claim. We also discussed the possibility of converting their case to a Chapter 13 case in order to retain all of the machinery and business equipment. However, I also advised the Debtors that they were unlikely to obtain a confirmed Chapter 13 Plan unless Mr. Morrison's

income reached its pre-injury level as his workers' compensation benefits were less than his regular income. Had I known Mr. Morrison's true income at the time the Petition was filed, instead of the income which the Debtors falsely reported and verified on February 21, 2014, perhaps I would have advised the Debtors differently at that time. On March 13, 2014, we also discussed the possibility of dismissing the Chapter 7 Petition with the idea of the Debtors attempting to negotiate directly with their creditors and with the opportunity to re-file at a later date if negotiations were not successful. Because none of the scenarios (remaining in Chapter 7, converting to Chapter 13 or not being in bankruptcy) was ideal, the Debtors requested time to consider their options.

13. Because of the uncertainty of their situation, I advised the Debtors it would be in their best interests to skip the §341(a) meeting that was scheduled on March 24, 2014. When the Debtors inquired of the consequences of missing the §341(a) meeting, I told them it would be re-scheduled. I also told them that two missed §341(a) meetings would likely result in the Trustee filing a Motion to Dismiss. At the conclusion of the meeting, we agreed to meet again in a few weeks as the Debtors wished to contemplate the scenarios.

14. On March 14, 2014, I filed amended Schedules I, J, B & C. See ECF documents #15-18. Schedules B & C were filed to list and to exempt the workers' compensation claim of January of 2014, which the Debtors disclosed for the first time on March 13, 2014. Schedule I was amended to remove Mr. Morrison's employment income and to replace it with his workers' compensation income. Schedule J was amended because the Debtors advised me of some corrections that were required. Therefore, the Debtors claim in paragraph 19(g) of their Certification that I filed the amended schedules without their knowledge or consent is false. In fact, after I filed the amended schedules, Mrs. Morrison

authorized further amendments to Schedule J when she provided me with further revisions to household expenses dated March 31, 2014, as evidenced by exhibit "C" attached hereto. I did not file a second amended Schedule J before I was terminated on April 4, 2014, as the further revisions were handed to me on April 3, 2014.

15. On April 3, 2014, I met with the Morrisons again. I did not know at that time, but between our March 13, 2014 meeting and April 3, 2014, they had spoken to three (3) other bankruptcy attorneys as set forth in their Certification. At that meeting, the Morrisons gave me the March 31, 2014 dated revisions to Schedule J and directed me to convert their case to a Chapter 13. When they asked if there would be an additional legal fee, I informed them that I would charge an additional $400.00 which I would seek in the Chapter 13 Plan after conversion. I did not ask for any more money from them at that or any other time.

16. On April 4, 2014, I received a letter from Debtors' counsel which included a letter from the Debtors terminating my services. See Exhibit "D" attached hereto.

17. In their Certification, the Debtors accuse me of mishandling their case in nine (9) different ways. I dispute each of them as follows:

18. In paragraph 19(a), the Debtors claim that I "filed a petition under chapter 7 of the bankruptcy code with nonexempt assets while we had been assured there was no problem in keeping our assets." As set forth above, the Debtors and I discussed the only potentially non-exempt assets in their case, to wit, the machinery, fixtures and equipment which they claim are titled in their individual names, yet used by their LLC. Contrary to the Debtors'claim, we did discuss the possibility of the Trustee seizing these assets, the age, quality and value of the machinery and equipment, the possibility of converting to Chapter 13, the possibility of taking a dismissal of the Petition and the possibility of negotiating directly

with their creditors. We also discussed their ability to exempt at least part of the equipment under 11 U.S.C. §522(d)(5) and (d)(6), and how a partial exemption might discourage the Trustee from pursuing the business assets. Based upon all of the preceding, the Debtors' blanket assertion that I assured them "there was no problem in keeping our assets" is misleading. We discussed all of their options as set forth above, including, most importantly, converting to Chapter 13, in which case none of their business machinery and equipment would be taken because it would be used to generate income to fund a Chapter 13 Plan. As noted above, had I known on February 21, 2014 that Mr. Morrison's true income was less than he reported and verified, then I would have explained how a Chapter 13 case may not have been feasible and may not have provided the fall-back protection they needed if the Chapter 7 Trustee pursued the business assets. However, I have no control over the Debtors' lack of candor and honesty.

19.     Next, in paragraph 19(b), the Debtors claim that the "schedules prepared by Mr. Wilhelm were inaccurate and did not comport with the information we delivered to his office. Material assets were omitted from our schedules." Without specifying how the Schedules allegedly were inaccurate and how material assets allegedly were omitted from the Schedules, it is difficult to respond to this allegation. Nonetheless, as set forth above, the Schedules which I prepared were completely accurate based upon the information that the Debtors provided to me. The Debtors were not honest and forthcoming initially in disclosing all of the assets which they owned (ie: three (3) bank accounts, a term life insurance policy, jewelry, collectibles, an IRA, office equipment and assets/equipment owned by their LLC). The nature and the extent of their assets were discovered by my paralegal conversing with Mrs. Morrison on repeated occasions as she prepared the Petition in the software program.

The Debtors never advised me that Mr. Morrison had been collecting workers' compensation benefits since January of 2004. In short, the Debtors never were completely honest. For example, when the Debtors reviewed the Petition and signed it in my presence on February 21, 2014, they swore to the accuracy of all the information which included, *inter alia,* a statement that Mr. Morrison was working, that he did not have any potential claims for injury against anyone and that he was not collecting workers' compensation benefits. Yet, as set forth above, none of the preceding was true. It was not until March 13, 2014, that the Debtors disclosed that Mr. Morrison had not been working since January of 2014, and was collecting workers' compensation benefits. It is interesting to note that the Debtors claim the schedules which I prepared "did not comport with the information we delivered to his office." In hindsight, it is evident that the Debtors purposely were not providing me with all of the relevant information which I had requested. They were attempting to disclose only limited information. However, once the Debtors disclosed information that was inconsistent with the Schedules that had been filed originally, I immediately met my obligation under the Bankruptcy Code and filed corrected Schedules. Contrary to the Debtors' unsubstantiated allegations, all of the Schedules that I prepared were accurate based upon the information they provided to me. When the Debtors provided new information, I amended the Schedules as required by law. There are no material assets omitted from the Schedules. Therefore, this allegation of misconduct by me is untrue.

20.     In paragraph 19(c), the Debtors claim: "Mr. Wilhelm nor anyone in his office sufficiently reviewed our schedules with us prior to filing them." I disagree. I reviewed the Petition and the Schedules with the Debtors on February 21, 2014. I answered all of their questions. They never advised me that they did not understand anything. I also had the

Debtors review and sign a Certified Statement, a copy of which is attached hereto as exhibit "E." In the statement, the Debtors certified that they had disclosed all of their assets, income, debts and expenses and all relevant information accurately. As of February 21, 2014, when they signed the Statement and signed the Petition and Schedules, *inter alia*, the Debtors failed to advise me that Schedules B and I were not accurate based upon their intentional failure to disclose Mr. Morrison's active workers' compensation case. Therefore, the Debtors' claim that I did not sufficiently review the Schedules with them is a self-serving statement which is not supported by the facts.

21.     In paragraph 19(d), the Debtors claim that I "spent no more than 60 minutes with" them. This is not true. Attached hereto as exhibit "F" is my timesheet for the Debtors' case. The timesheet speaks for itself. It illustrates that I met with the Debtors (or at least one of them) on November 4, 2013, February 21, 2014, March 13, 2014, and April 3, 2014, for a total of 1.8 hours. I also spoke with Mrs. Morrison via the telephone on December 11, 2012, and March 19, 2014. Further, Mrs. Morrison spoke to my paralegal on many occasions as the Petition was being prepared. Because my paralegal is not required to record the time she spends speaking with bankruptcy clients and preparing their petitions, I cannot say how much time my paralegal spent interacting with the Debtors. However, the time spent with the Debtors by me and my paralegal was customary for a Chapter 7 consumer bankruptcy case. Therefore, the Debtors' bald claim, again not supported by any facts, is self-serving and untruthful.

22.     In paragraph 19(e), the Debtors state that they "do not believe Mr. Wilhelm in any way earned an attorney fees, he has only cost us time, money, anguish, and aggravation." For all of the reasons set forth in this Certification, I wholly disagree with the Debtors. I

provided them with legal advice and legal representation which is valuable to them. I prepared a bankruptcy Petition. I communicated with some of their creditors. As set forth herein, the Debtors were not completely honest with me throughout my representation of them. Their lack of candor and their ignorance of the bankruptcy law has skewed their perspective regarding my obligations to them and my efforts on their behalf. I have earned my fee. The Debtors' only "aggravation" appears to be that I amended their Schedules, as required by law, when they wished that I had not in furtherance of their efforts not to accurately disclose all of their assets.

23.    In paragraph 19(f), the Debtors correctly state that neither I nor they attended the §341(a) meeting. As set forth above, it was a collaborative decision not to attend the §341(a) meeting as the Debtors needed additional time to figure-out how they wished to proceed (ie: remain in Chapter 7, convert to Chapter 13, seek a dismissal & negotiate with creditors). As evidenced in their own Certification, the Debtors used the time to their advantage. They consulted with three (3) different bankruptcy lawyers. They have retained the services of another lawyer. Most importantly, they are going to obtain the benefit of a Chapter 13 case whereby they will not be required to surrender any business assets. Therefore, my decision to advise them skip the §341(a) meeting actually benefited them and, in no manner, hindered them.

24.    In paragraph 19(g), the Debtors claim that I "filed amendments to our schedules B, C, I, and J without showing us these amended schedules and filed amendments without our knowledge or consent." They are correct that I did not show them the amended Schedules. However, the claim that I amended the Schedules without their knowledge or consent is a blatant lie. To the contrary, I amended schedule J at the direction of the Debtors.

See exhibit "C" attached hereto. On March 14, 2014, I amended schedule I to reflect, accurately, that Mr. Morrison was not working, but rather was collecting workers' compensation benefits. This amendment was required as the Debtors, for the first time on March 13, 2014, revealed Mr. Morrison's true income and the fact that he had a workers' compensation claim. As for amended schedules B & C, they were filed to list and to exempt Mr. Morrison's workers' compensation claim. The Debtors were aware of all of the preceding. Assuming, *arguendo*, that the Debtors were not aware that I filed amended schedules B, C, I and J, on March 14, 2014, a mere one day after they met with me and provided me with accurate information, I am not at fault. By filing the amended schedules, I was meeting my obligations under the law to provide accurate information to the Court. Therefore, this baseless allegation is belied by the facts of the case.

25.     In paragraph 19(h), the Debtors claim: "Mr. Wilhelm charged us an additional $300, which he did not disclose to the court in his attorney disclosure." This statement is a blatant lie. My attorney disclosure is accurate. Also, attached hereto as exhibit "F" is a copy of the Debtors' February 20, 2014 cash receipt for $1,600.00, which reflects the $1,294.00 attorneys' fee and the $306.00 filing fee that I received from them. I have not received any additional money from the Debtors. I have no idea why the Debtors would falsely claim that I charged them an additional $300.00. However, I suspect their false claim is made in a desperate effort to enhance their porous claims against me.

26.     In paragraph 19(i), the Debtors claim that I "did not follow our instructions regarding our intentions in Bankruptcy or the protection of our assets." This statement is problematic. If the Debtors are asserting that I failed to follow their instructions because I amended schedules B, C, I and J, when I learned that they were not honest with me in

disclosing all relevant information, then I concur. If the Debtors are arguing that I failed to protect their assets, I disagree. All of their assets are protected. With an automatic right to convert to Chapter 13 pursuant to 11 U.S.C. §1307(a), the Debtors business assets never have been jeopardized. The Debtors' claims, once again, are false.

27.    All of the preceding illustrates that the Debtors' lack of candor with me, their efforts to control, to limit and/or to manipulate the disclosure of information to me, and their overall ignorance of bankruptcy law has clouded their judgment so as to make baseless allegations against me which impugns my legal ability and my integrity under the direction of their new attorney who shamefully has countenanced the false allegations without the professional courtesy of either conducting an investigation into the Debtors' claims or a telephone call to me to discuss the same. The Debtors do not have any facts to support their nine (9) false, broadside allegations. They are simply the musings of unhappy and untruthful Debtors. The Debtors' decision to obtain new counsel is their exclusive right. However, the Debtors do not have a corollary right to misrepresent the facts of my representation in a sworn statement to this Court and to impugn my integrity and my legal ability simply because they wish to use the funds they paid to me to pay their new counsel.

28.    For all the reasons stated herein, I respectfully request this Court deny that part of the Debtors' Motion to Disgorge the legal fees paid to me.

29.    I certify that all of the statements made by me herein are true. I understand that if any of the foregoing are willfully false I am subject to punishment.

SCOTT M. WILHELM, ESQ.

DATED: APRIL 22, 2014

(EST.) Buisiness expenses until 10-31-13
Yr1

estimated from 2012 *

* Car + truck (gas)                                4 200
* Advertisy                                           200
* Insurance vent+liability                          2500
* office                                               800
  Supplies


* taxes                                               .50.
* utilities (phones, electric, gasheat,    4200   ~~2400~~
            internt)
  wilson monthly rental                              240
  Bldg rental                                     10,250.—

  From    PNC + Unity Accts
( materials, supplies, repairs all misc expnsy
       not included above)
                                                  —25,160

  ~~wages~~


                                          $ 47,600.—


  Gross receipts

    $ 41,920.00

EXHIBIT
A
ALL-STATE LEGAL®

            * 5680  Loss as of
                    Oct 31, 2013

# Business Assets

| | |
|---|---:|
| Yicon Plasma Table | 16,000. |
| TDF Machine | 15,000. |
| Pittsburg Machine | 3,500. |
| 3 in 1 Machine | 1,000. |
| Tensmith 6' Brake | 4,000. |
| 4' Box and Pan Brake | 1,000 |
| Cheek Bender | 400. |
| 3' Jump Shear | 1,000. |
| (2) 3' Rolls @ $1,000. each | 2,000. |
| Drive Bender | 300. |
| Pneumatic Shear | 3,000.- |
| | $47,200. |

| | |
|---|---:|
| (2) Plotters | $2,000. |
| (4) computers w/ monitors | 200.- |
| fax | |
| copy machine | |

EXHIBIT
B
ALL-STATE LEGAL®

7

Revised
March 31st 2014

## MONTHLY EXPENSE BUDGET

| HOUSING EXPENSES | | LIVING EXPENSES | | | |
|---|---|---|---|---|---|
| Mortgage | $ 1416.- | Telephone/Cell Phone | $ 170 | Gifts & Entertainment | $ |
| Mortgage | $ | Cable | $ 8 | Pet Care | $ 25 |
| al Estate Taxes | $ | Internet | $ | Union Dues | $ |
| meowners urance | $ | Groceries | $ 1208 | Pension Contribution | $ |
| ndo es/Assessments | $ | Lunches | $ 40 | IRA Contribution | $ |
| bile Home Lot nt | $ | Clothing | $ 60 | 401K Contribution | $ |
| intanance Fees | $ | Laundry/Cleaning | $ | Personal Tax | $ |
| sociates Fees | $ | Alcoholic Beverages | $ 40 | Tithing | $ |
| s (House) | $ | Tobacco Products | $ 120 | Tuition | $ |
| ectric | $ 355 | Toiletries | $ | Savings | $ |
| l | $ 229 | Personal Needs | $ 80 | Student Loans | $ |
| ater | $ 77 | Prescriptions | $ 321 | | $ |
| wer | $ | Dental | $ | | $ |
| ash | $ 32 | Auto Payments | $ | | $ |
| her septic pumped | $ 10 | Car Insurance | $ 233 | | $ |
| | | Gasoline | $ 120 | Medical Bills | $ |
| OTES & COMMENTS: | | Car Repairs | $ 50 | Medical Bills | $ 140 |
| | | Public Transportation | $ | Medical Bills | $ |
| | | Life Insurance | $ 40 | Co-Signed Debts | $ |
| | | Medical Insurance | $ | Business Debts | $ |
| | | Child Support/Alimony | $ | Other Walmart (household) | $ |
| | | Day Care | $ | Other Motor Vehicle Reg. | $ 17. |
| | | Recreation | $ | Other Vitamins + supplements | $ 50 |
| | | School Expenses | $ 25 | Other | $ |

TOTAL AMOUNT: $ 4866.-

EXHIBIT

C

**Member of**

PA & NJ Bars
Eric L. Leinbach

# Eric Lester Leinbach, Esq.
## Attorney and Counselor at Law

*1603 Butler Street*
*Easton, Pennsylvania 18042*
*Phone No. (610) 258-5859*
*Fax No. (610) 252-0806*

April 4, 2014

Scott M. Wilhelm, Esq.
Winegar, Wilhelm, Glynn & Roemersma
305 Roseberry Street,
Phillipsburg, NJ 08865
1st class mail and
Fax  908-454-3322

Re:  Gary Morrison and Michelle Morrison
Bankruptcy Case # 14-13436

Dear Mr. Wilhelm,

The Morrison's have retained me to convert their chapter 7 bankruptcy to chapter 13, and to replace you as their counsel. Enclosed please find a Substitution of Attorney, please execute the same and returned it to me for filing. Additionally please find a copy of the Morrison's authorization and direction for you to turnover the entire bankruptcy case file to me as soon as possible. Thank you.

Respectfully yours

Eric Lester Leinbach

Cc:Gary and Michele Morrison
543A North Main Street
Stewartsville, NJ  08886



RECEIVED
APR  7 2014

EXHIBIT

UNITED STATES BANKRUPTCY
COURT
DISTRICT OF NEW JERSEY

Eric L. Leinbach, Esq.
1603 Butler Street
Easton, PA 18042
Phone Number (610) 258-5859
Fax Number (610) 252-0806
Attorney for the Debtors Morrision
ruthjacome@nni.com

|  |  |
|---|---|
| In Re: Gary Morrison and | Case No.: 14-13436-CMG |
| Michele Morrision | Adv. No.: N/A |
| Debtors | Hearing Date: May 7, 2014 at 9:30 AM |
|  | Judge: Gravelle |

## <u>SUBSTITUTION OF ATTORNEY</u>

TO THE CLERK OF THE COURT,

Please enter my appearance for the debtors Gary Morrison and Michelle Morrison

Dated _____

Eric Lester Leinbach, Esquire

Please withdraw my appearance for the debtors Gary Morrison and Michelle Morrison

Dated _____

Scott M. Wilhelm, Esquire

I, ___GARY & MICHELE MORRISON___, have reviewed the bankruptcy petition and attached schedules to my voluntary Chapter (7/13) bankruptcy petition which has been prepared by my bankruptcy attorney, Scott M. Wilhelm, Esq., and certify as follows:

1.  All of the information in the bankruptcy petition and schedules was provided by me to my bankruptcy attorney.

2.  I have listed all of my assets with their estimated values. I have determined the value of the assets to the best of my ability. I have a reasonable basis for the estimated value of my assets. My attorney has not provided me with any values of my assets. I have not failed to schedule any existing assets.

3.  I have listed all of my debts with current estimated balances. I have not failed to schedule any existing debt or liability. My attorney is not aware of my debts and liabilities other than what I have told him.

4.  I have provided to my bankruptcy attorney all of the information which he has requested.

5.  I have not been asked by my bankruptcy attorney to do anything related to the filing of the bankruptcy petition which I reasonably believe is fraudulent, inaccurate, untruthful, or in violation of the bankruptcy or criminal laws.



6.    My bankruptcy attorney has answered all of my questions as of this date that I have signed my bankruptcy petition. At this time, I do not have any questions of my bankruptcy attorney of which he has refused to answer or to which he has not provided me with a satisfactory response.

7.    I certify that the foregoing statements made by me are true.

_____
Debtor

_____
Joint Debtor

_____
2-21-14
Dated

# *Winegar, Wilhelm, Glynn & Roemersma*

*305 Roseberry Street*
*P.O. Box 800*
*Phillipsburg, NJ 08865*
*Ph:908-454-3200*
*Fax : 908-454-3322*

# PREBILL

April 11, 2014

Gary Morrison
543 A North Main Street
Stewartsville, NJ 08886

Invoice Number:  Sample

File #:  1204

Case:  NJ Bankruptcy (chapter 7)

---

FOR PROFESSIONAL SERVICES AND DISBURSEMENTS RENDERED THROUGH     April 11,2014

| | |
|---|---:|
| LEGAL FEES | $1,200.00 |
| DISBURSEMENTS | $306.00 |
| TOTAL CURRENT CHARGES | $1,506.00 |

## SUMMARY OF ACCOUNT

| | |
|---|---:|
| Balance From Previous Bill | $0.00 |
| Total New Charges | $1,506.00 |
| Retainers Applied to Current Invoice | $1,506.00 |
| **TOTAL BALANCE DUE** | **$0.00** |

Initial Retainer
Retainer Balance                                        $94.00

| Balance Aging | <=30 | <=60 | <=90 | <=120 | > 120 |
|---|---|---|---|---|---|
| | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |



EXHIBIT
F
ALL-STATE LEGAL®

| DATE | DESCRIPTION | HOURS | |
|------|-------------|-------|---|
| 11 /4/13 | Office Conference with client. | 0.50 | SMW |
| 11 /14/13 | letter to clients with retainer agreement. | 0.20 | SMW |
| 2 /21/14 | OC with clients | 0.50 | SMW |
| 2 /22/14 | review file | 0.20 | SMW |
| 2 /27/14 | letter to client enclosing Petition | 0.20 | SMW |
| 3 /5/14 | Letter to clients requesting itemization of machinery & equipment. | 0.20 | SMW |
| | letter to clients for value of business equipement. | 0.20 | SMW |
| 3 /6/14 | letter to cleints for items requested by Trustee | 0.20 | SMW |
| 3 /10/14 | review letter from creditor's attorney | 0.20 | SMW |
| 3 /13/14 | OC with clients | 0.60 | SMW |
| 3 /19/14 | Tc with client; Letter to Attorney Hayes no contact. | 0.20 | SMW |
| 3 /31/14 | review letter from attorney Hayes | 0.20 | SMW |
| 4 /1/14 | letter to clients enclosing dismissal State Court Complaint | 0.20 | SMW |
| 4 /3/14 | OC with clients | 0.20 | SMW |
| 4 /4/14 | review letter from attorney Leinbach | 0.20 | SMW |

Total Professional Services                      $1,200.00

| FEE SUMMARY: | Hours | Rate | Amount |
|--------------|-------|------|--------|
| Scott M. Wilhelm | 4.00 | $300.00 | $1,200.00 |

**DISBURSEMENTS:**

| 2 /27/14 | Amex | Filing Fee | 306.00 |
|----------|------|------------|--------|

Total Disbursements Advanced                     $306.00

**PAYMENTS RECEIVED**

| 2 /24/14 | Retainer re: BKR - cash | $1,600.00 |
|----------|-------------------------|-----------|