| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br><br>Eric L. Leinbach, Esq.<br>1603 Butler Street<br>Easton, PA  18042<br>Phone Number (610) 258-5859<br>Fax Number (610) 252-0806<br>Attorney for the Debtors Morrision | |
| In Re:  Gary Morrison and<br>          Michele Morrision<br><br>                    Debtors | Case No.:  14-13436-CMG<br><br>Adv. No.:  N/A<br><br>Hearing Date: May 6, 2014 at 10:00 AM<br><br>Judge:  Gravelle |

**<u>CERTIFICATION IN REPLY TO TRUSTEES OPPOSITON TO DEBTORS MOTION TO CONVERT TO CHAPTER 13 AND DISGOURGE ATTORNEYS FEES</u>**

We Gary and Michele Morrison certify as follows:

1. Upon information and belief and advice of counsel, we have a statutory right to convert our case from chapter 7 to chapter 13. 11USC706

2. The Trustee's objection to our conversion is riddled with presumptions, false assumptions, and inaccurate statements.

3. The Trustee recites in paragraph 3 of her objection to our conversion (hereinafter "objection") that we have limited income stemming from the workers compensation case, which we apparently failed to initially disclose: and further, that we have no ability to propose a feasible plan.  These assertions are simply not true. First, we did not know that we had a workers compensation claim until February 24,

2014 after we signed, and filed the petition, and did not begin receiving checks from workers compensation until March 10 or 11, 2014. Therefore, we could not set forth that we had a workers compensation claim, or workers compensation income on our original petition. Second, our new counsel had advised the Chapter 7 panel Trustee our schedules were inaccurate and he was in the process of revising them. When we met with our original attorney, Mr. Wilhelm, we were not presented with our complete petition and schedules for review, but rather with eight signature pages to sign and only saw two pages of our schedules. We subsequently met with Mr. Wilhelm in March, he asked us to sign a piece of paper, and unbeknownst to us he filed amendments in our case, which we never saw, or were told about. We have never seen the amendments until our new counsel showed us and provided copies of the amendments to us.

4.      In paragraph 4, of the Trustee's objection it is asserted that the real reason we seek to convert to Chapter 13 is to retain assets for the business, which is producing zero income. The statement is patently false, we initially contacted Mr. Wilhelm in order to file a Chapter 13 and proceeded down that path for some time. After meeting with Mr. Wilhelm, he changed his advise and recommended we file Chapter 7. Moreover, our business is not losing money. During the first quarter of 2014 the business had a profit of approximately $5000; and we very much can propose a feasible plan. What may be in question is our qualification to be in Chapter 7 bankruptcy. Mr. Wilhelm has in his certification set forth that he believes our maximum family size would be limited to four individuals, which we understood and did not object to. However, in the statement of current monthly income, Mr. Wilhelm set forth our family size as five. Upon information and belief, Mr. Wilhelm increased our family size from four to five, in order to make us eligible for a Chapter 7, which we did not seek to file. We did not see the statement of current monthly income, when we signed the signature pages for the petition and schedules. We very much can propose a feasible plan based on our income; and should our business income dissipate, we have alternative means which we could implement to produce income.

5.      In paragraph 5 of the Trustee's objection, the Trustee asserts that our schedules are riddled with inconsistencies. That is true. However, until our new counsel showed us the bankruptcy schedules on April 4, 2014 we had not reviewed the

schedules or the subsequent amendments. Our counsel has advised us that he contacted the chapter 7 Trustee Peggy Stalford and advised her the schedules were erroneous and unreliable and that he would amend them.

6. In paragraph 6 of the Trustee's objection, the Trustee asserts that the path to chapter 13 would be doomed to failure, and that on the face of it our case represents a bad faith filing. However, there has been no bad faith by us at any time, only misplaced trust in our original counsel and, very poor advice from our original attorney who we relied upon. We have never been involved in a court action, or any bankruptcy and have never had an attorney before Mr. Wilhelm represented us.

7. In paragraph 7 the Trustee asserts that we intentionally did not go to our section 341 meeting of creditors, and that we had hoped our case would be dismissed. It is true that we did not attend our section 341 creditors meeting, as we were instructed by our counsel not to do so; and he informed us that he would not go to the hearing. At the same time Mr. Wilhelm indicated that the court would reschedule the hearing, and that he had no intention of going to the second rescheduled hearing nor should we attend the hearing, so that the case would be dismissed. However, dismissal of our case was not our desire or expectation; we filed bankruptcy in order to obtain relief from our creditors and obtain a fresh start. It was Mr. Wilhelm, who wanted the case dismissed. Being instructed not to go to our hearing was a flashing red light to us and being informed that we should not go to the second hearing so that our case would be dismissed was the bells, whistles and sirens. We then sought alternative legal advice because we did not want our case dismissed and the advice we were obtaining from Mr. Wilhelm did not ring true.

8. In paragraph 11 of the Trustee's objection the Trustee asserts that we filed amended schedules. While we acknowledge the amended schedules were filed after a review of the docket with our new counsel; we never saw or were aware the amended schedules prior to their being filed by our former counsel.

9. The Trustee setforth at great length the inconsistencies with our schedules, as well as the impropriety of the exemptions taken, we don't dispute that. Our new counsel upon being retained promptly called Peggy Stalford to advise her, the schedules were improperly done, were erroneous, and were inaccurate and would be

amended. Counsel for the Trustee is only stating the obvious, and that which was already communicated to the Trustee three weeks ago.

10. Gary Morrison has returned to work on April 30, 2014. After being released by his doctor in order to resuming work full-time. Our business is growing and has become profitable.

11. At all times, we have been honest with our former counsel our present counsel and believed all times we were doing the proper things with the bankruptcy court. We are not bankruptcy attorneys, we are not attorneys, we are not paralegals, we are not legal secretaries, we've never worked in a law office or the bankruptcy court. We don't know bankruptcy law or of the bankruptcy rules, and therefore we hired an attorney who held himself out to be knowledgeable about bankruptcy matters. We had delivered documentation to Mr. Wilhelm, amounting to 2.5 to 3 inches of paperwork, which documented our financial situation. Had we been given copies of our schedules, and had Mr. Wilhelm discussed and reviewed the schedules with us prior to the schedules being filed , then the errors no doubt would've been corrected or petition or schedules not filed. During our dealings with Mr. Wilhelm we advised him, we had gone to great lengths and to great expense to attempt to start a business during the last 3 to 4 years and to repay our creditors. We advised Mr. Wilhelm it was of the utmost importance to us that the business assets as well as our personal assets be protected during the bankruptcy process.

12. While the Trustee accuses us of running for the hills, the only thing we've done is run from our former counsel to a new one. Since we were so underrepresented that for all practical purposes we were unrepresented; and certainly by the instructions we received not to attend our section 341 creditors meeting the first time or second time misrepresented.

13. We've only sought to do what we were supposed to do. However our original counsel did not advise us properly as to what to do. It is not a matter of bad faith conduct on our part but rather a lack of knowledge and the misrepresentation of our former counsel.

14. The Trustee also asserts that we are attempting to manipulate exemptions. Up until two weeks ago we did not know what exemptions were, we cannot manipulate something we don't even know that exists or means.

15. Annexed hereto as Exhibit A is a true, genuine and accurate copy of an April 28, 2014 appraisal of our business machinery with the exception of the forklift.

16. A separate estimate as to value of the forklift was obtained and true genuine and accurate copy of the forklifts' estimated value dated April 30 is attached hereto as Exhibit B.

17. Mr. Wilhelm had never requested that we obtain evaluation of our business machinery.

18. The value of our home is overstated in our petition and schedules. All Mr. Wilhelm had obtained a recent Zillow appraisal which comports to the amended value of her home Mr. Wilhelm chose to use a 2010 appraisal which was substantially higher and out of date. Mr. Wilhelm had never requested we get a recent appraisal, CMA or, brokers Price opinion.

19. The only instructions we received initially from Mr. Wilhelm's office in completing our bankruptcy worksheets was that, if we are were unsure of any value to leave the item blank. Annexed hereto and made part hereof as Exhibit C is a true genuine and accurate copy of an example that we were given. The court should note that in the upper right-hand corner the instruction to leave items blank. Subsequently Mr. Wilhelm requested we provide our best estimate as to the value of our machinery, however we are not appraisers.

20. The vast majority of the machinery we purchased was done out of our personal account and not our business account; were asked for a list of the machinery and values and we used purchase price for the most part. We were never given any guidance as to determining ownership or how value the machinery. Whether the business purchased the machinery or we did so individually is objectively demonstrable and traceable through both our business bank account and our personal account. However we understand since the intended use was for the business and that our personal purchases were on behalf of the business all the machinery should be considered business machinery of the LLC.

21. The operating loss of the LLC which the trustee complains of was based upon the accounting. January 1 through October 31, 2013; no time period for the business income was requested or suggested.

23.     The first time Gary Morrison met with Scott Wilhelm was on February 21, 2014 when 5-8 signiture pages were presented to him for signature during a ten minute meeting.

5/2/2014

/s/ Gary  Morrison

/s/  Michele Morrison

# EXHIBIT A



*Serving the HVAC &
Fabrication Industries*

New & Used Machinery • Repairs • Parts • Maintenance

April 28, 2014

Mr. Gary Morrison
Morrison Design, LLC
543 N Main St.
Stewartsville, NJ 08886

Equipment Dealer Purchase for Shop Equipment Valuation

| Description | Age/Year | Purchase Amount |
|---|---|---|
| Flagler TDF Machine H414-DF2 | 2007 | $9,000 |
| Vicon Plasma Table Model 8000 | 2006 | $12,000 |
| Lors-Tecna Spot Welder 4604-NA | 2011 | $1,200 |
| Pittsburgh Lock Air Hammer | 2011 | $150 |
| Flagler Easy Edger | 2011 | $200 |
| Tennsmith Cleat Bender | 30 yr | $200 |
| Cheek Bender | 40 yr | $150 |
| Flagler #20 gauge Pittsburgh Machine | 40 yr | $1,500 |
| National D416 Box and Pan Brake | 15 yr | $500 |
| Tennsmith Box and Pan Brake HBT72-16 | 2004 | $1,750 |
| Pexto 8' Jump Shear | 50 yr | $1,000 |
| Chicago 8' Hand Brake | 50 yr | $750 |
| Engel 3-in-1 Rollformer | 50 yr | $500 |
| Pexto 3' Jump Shear | 50 yr | $400 |
| Lincoln SP170-T Portable Mig Welder | 15 yr | $250 |
| Lincoln Stick Welder | 50 yr | $200 |
| Amrox AF-12 Drill Press | 40 yr | $100 |
| Amrox Pedestal Grinder ¾ HP | 40 yr | $50 |
| Amrox BS-450 Horizontal Band Saw | 40 yr | $50 |
| Kalmar C60B Fork Lift | 1988 | Not evaluated |

Pricing is valued as of April 2014.

Should you have any questions, we welcome your call.

Sincerely,

Randall L. Pobutkiewicz
President
R.P. Machine

Phone: 973.383.8994 • Fax: 973.300.5627 • Toll Free: 800.838.6570 •
www.rpmach.com & www.shopRPMachine.com
P.O. Box 144 • Stillwater, New Jersey 07875

# EXHIBIT B

 

**C&C Lift/Truck, Inc.**
30 Parkway Place • Edison, NJ 08837
Phone: 732-727-4500 • Fax: 732-727-7597

KOMATSU TCM BIG JOE
Authorized Dealer

April 30, 2014

Morrison Design LLC
1559 Springtown Road
Alpha NJ 08865

1988 Kalmar Model C60B

Per our phone conversation, based on the year of your Forklift the unit is only Worth scrap value about $500.00.

Sincerely,
Cammy Kapusta

# EXHIBIT C

# ASSETS (property you own)

Type of property: ☐ Real Estate (real property)  ☑ Other (personal property)

Schedule B (personal property) category: *(refer to column on right)* 25

Description and location of property: *(if real estate, please provide the legal description)*

2000 Chevy Impala
w/ 110,000 mi

*[handwritten annotations: "resale value?", "kitchen appliances?", "assets", "furniture wear in general"]*

Ownership: ☐ Single Individual [n/a]  ☐ Husband  ☐ Wife  ☐ Joint  ☐ Community

Market Value: $ 3000.00

Date Purchased: 12/02

If real estate, state your interest: _____

If you still owe money on this property, list to whom:

1. _____
2. _____
3. _____

Your attorney will complete the following:

Exemption Statute: _____  Amount: _____

Exemption Statute: _____  Amount: _____

Exemption Statute: _____  Amount: _____

**Notes** Please review the personal property categories on the right. After reviewing the categories, choose the categories that pertain to you. For each category that pertains to you, please list each on a separate sheet. Please use the example shown above as a guide on on the category should be listed.

*If you are unsure about an answer leave it blank!*

### Personal Property Categories:

1. Cash on hand
2. Deposits of money
3. Security deposits
4. ⓘ Household goods, supplies, and furnishings
5. Books, pictures, art objects; stamp, coin, and other collections
6. ⓘ Wearing apparel
7. Jewelry
8. Firearms, sports equipment and other hobby equipment
9. Interests in insurance policies
10. Annuities
11. Interests in an education IRA
12. Pension or profit-sharing plans
13. Stock interest in incorporated and unincorporated companies
14. Interests in partnerships
15. Government and corporate bonds and other negotiable and non-negotiable instruments
16. Accounts receivable
17. Alimony, or family support
18. Other liquidated debts owing debtor, including tax refunds
19. Equitable and future interests, life estates and rights or powers
20. Contingent and non-contingent claims
21. Other contingent and unliquidated claims
22. Patents, copyrights and other intellectual property
23. Licenses, franchises and other general intangibles
24. Customer lists or other compilations containing personally identifiable information
25. Automobiles, trucks, trailer and other vehicles
26. ⓘ Boats, motors and accessories
27. Aircraft and accessories
28. ⓘ Office equipment, furnishings and supplies
29. ⓘ Machinery, fixtures, equipment and supplies
30. Inventory
31. Livestock, poultry and other animals
32. Crops
33. Farming equipment and implements
34. Farm supplies, chemicals and feed
35. Other personal property

*The more complete the packet, the easier it is to process*

© 1993-2007 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

## LIABILITIES (debts you owe)

Type of debt: [X] Unsecured  [ ] Secured  [ ] Priority  [ ] Notice Only

Creditor Name: __Macy's__

Address: __x x    xxxxx    xx__

__xxxxxx xx,  xx     xxxx__

Contact: _____  Telephone: _____

Account Number: __x xxxxxx 9628__

Responsible Party: [ ] Single Individual [n/a]  [ ] Husband  [ ] Wife  [ ] Joint  [ ] Community

Amount Owed: $ __2,500.00__   If priority debt, amount of priority: $ _____

Date of Claim: *(list the date claim was incurred, nature of lien and any property subject to that lien)*

_____
_____
_____

Your intent: [ ] Surrender  [ ] Reaffirm  [ ] Redeem  [ ] Exempt

**Assignees** *(list the names and addresses of any parties attempting to collect on behalf of this creditor)*

Name: _____
Address: _____
_____
Contact: _____  Telephone: _____

**Codebtors** *(list the names and addresses of any persons that are liable for this debt with you)*

Name: _____
Address: _____
_____
Contact: _____  Telephone: _____

Name: _____
Address: _____
_____
Contact: _____  Telephone: _____

*If you are unsure about an answer leave it blank!*

*If a priority debt, indicate the type of priority:*

[ ] Domestic Support Obligations
[ ] Extensions of credit in an involuntary case
[ ] Wages, salaries, and commissions
[ ] Contributions to employee benefit plans
[ ] Certain farmers and fisherman
[ ] Deposits by individuals
[ ] Taxes and certain other debts owed to governmental units
[ ] Commitments to maintain the capital of an insured depository institution
[ ] Claims for death or personal injury while debtor was intoxicated

**Notes** Please list all debt on the pages entitled Liabilities. Just like the asset pages, please use a separate sheet for each liability you have. The creditor name, address and the last four digits of the account are required. The amount owed is not necessary however it is helpful.