**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
United States Courthouse
402 East State Street, Room 255
Trenton, New Jersey   08608

**Hon. Christine M. Gravelle**　　　　　　　　　　　　　　　　　　　609-858-9370
United States Bankruptcy Judge　　　　　　　　　　　　　　　Fax   609-989-0431

### LETTER DECISION

October 22, 2015

**Sent via ECF & email**

Eric L. Leinbach, Esq.
1603 Butler Street
Easton, PA 18042　　　　　　　　　　　　　　office1603@rcn.com

Albert Russo, Esq.
Standing Chapter 13 Trustee
CN 4853
Trenton, NJ 08650-4853　　　　　　　　　　　　docs@russotrustee.com

　　　　　Re:　**Gary and Michele Morrison**
　　　　　　　　**Chapter 13 – Case No. 14-13436 (CMG)**
　　　　　　　　**Application for Compensation of Debtors' Attorney**

Dear Litigants:

### Introduction

This matter comes before the Court on remand from the United States District Court (the "District Court") for clarification of this Court's reduction of attorney fees awarded to Eric Leinbach, counsel to the Debtors.  Mr. Leinbach submitted a request for allowance of fees in the amount of $19,500.00.  The amount sought was less than the amount incurred, as Mr. Leinbach had voluntarily reduced his fee by $1,044.00 prior to filing the fee application.  This Court further reduced the amount sought by $1,956.00, resulting in a final fee award of $17,544.00.  Because this Court did not provide sufficient reasons for the reduction on the record, we do so now and provide the basis in law for the reductions.

## Jurisdiction and Venue

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended October 17, 2013, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). Venue is proper in this Court pursuant to 28 U.S.C. § 1408. Pursuant to Fed. R. Bankr. P. 7052, the Court issues the following findings of fact and conclusions of law.

## Facts and Procedural History

The history of this underlying bankruptcy filing informs the analysis of the fee application and will be briefly discussed herein. On February 27, 2014 Debtors filed a Chapter 7 bankruptcy petition through prior counsel. The docket reflects that the Chapter 7 Trustee retained counsel and an accountant, and sent a Notice of Assets to the creditors in the case. Shortly thereafter, on April 9, 2014, Mr. Leinbach substituted in as attorney.

After substituting in as counsel, Mr. Leinbach engaged in the following motion practice:

- Motion to Convert Case to Chapter 13
- Motion to Disgorge Prior Counsel's Attorneys Fees[1]
- Defense against Chapter 7 Trustee's Objection to Debtors' Exemptions
- Motion for Turnover of Property Requiring Prior Counsel to Turnover Debtors' Case File
- Objection to Chapter 7 Trustee's Counsel's Attorneys Fees

Each of these matters was contested. The outcomes were mixed. Ultimately, the case was converted to Chapter 13. Prior counsel was instructed to disgorge its fees in the amount of $1,294.00 to Debtors. Due to the conversion of the case, the Chapter 7 Trustee withdrew his objection to Debtors' exemptions. The Chapter 7 Trustee's Counsel's Fee Application was

---

[1] The Motion to Convert and Motion to Disgorge were contained in the same filing

reduced from $9,925.00 to $8,000.00. The Motion for Turnover was denied as moot, as prior counsel certified that he had turned over the file to Debtors in advance of the filing of the motion.

In addition to the motion practice, Mr. Leinbach worked towards a confirmable Chapter 13 plan for debtors. By order dated December 19, 2014, this Court confirmed a plan that required total payments of $55,800.00, with included a minimum dividend of $20,070.00 to general unsecured creditors.

Also in December 2014, Mr. Leinbach filed his Application for Compensation, requesting $19,500.00 in fees and $90.00 in expenses. The amount requested included a reduction in Mr. Leinbach's fees from $20,544.00 to the $19,500.00 figure. At the January 7, 2015 hearing he stated that the purpose of the reduction was so that the amount did not impact plan payments. The Chapter 13 Trustee objected, and on January 7, 2015 this Court reduced the total amount of fees by a sum of $3,000.00 from the original $20,544.00 amount to $17,544.00. Mr. Leinbach appealed, and the District Court remanded the matter to this Court to more fully describe the basis for the reduction.

## Legal Analysis

11 U.S.C. 330 provides for "reasonable compensation for actual, necessary services" rendered by professionals employed under 11 U.S.C. 327. 11 U.S.C. 330(a)(1). A court may award compensation that is less than the amount of compensation that is requested. 11 U.S.C. 330(a)(2). The Code instructs courts to disallow compensation for unnecessary duplication of services, or for services that were not reasonably likely to benefit the debtor's estate or necessary to the administration of the case. *See* 11 U.S.C. § 330(a)(4)(A). This Court's local rules outline

the required form of an application for fees.  *See* D.N.J. LBR 2016-1(b).  The local rule requires the applicant to provide, among other things,

> A narrative explanation of the nature of the work performed and the results achieved.  The narrative portion of the application shall inform the court of the circumstances that are not apparent from the activity descriptions or that the applicant wishes to bring to the attention of the Court, including, but not limited to, special employment terms, billing policies, expense policies, voluntary reductions, reasons for the use of multiple professional persons for a particular activity, or reasons for substantial time billed relating to a specific activity.

D.N.J. LBR 2016-1(b)(9).

These Code provisions codify extensive and long-standing case law outlining a court's responsibility in reviewing fee applications.  *See*, *e.g.*, Hensley v. Eckerhart, 461 U.S. 424, 434 (1983) (court should deny fees for excessive or redundant hours); In re Busy Beaver Bldg. Ctrs. Inc., 19 F.3d 833, 842-43 (3d Cir. 1994) (court holds independent authority and responsibility to review fee applications for reasonableness of compensation); Lipsett v. Blanco, 975 F.2d 934 (1st Cir. 1992) (court may reduce fee award if narrative of services is inadequate).

In its discussion of fee allowances, the Supreme Court cautions attorneys to balance the cost of litigation against its expected result, noting that "the most critical factor is the degree of success obtained."  *See* Hensley v. Eckerhart, 461 U.S. at 436.  In Hensley, the Court noted "[i]f … a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount."  *See* id.  Further, attorneys are encouraged to pursue settlement negotiations prior to filing suit to save time and money for their clients and courts may reduce fees for a failure to do so.  *See* Spegon v. Catholic Bishop, 175 F.3d 544, 552 (7th Cir. 1999).  Non-complex cases that do not involve novel areas of law do not support large fee awards.  *See* Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir 1992) (fees cut by more than 70% due to non-complex nature of case).

Finally, courts should disallow hours expended by counsel on tasks that could be delegated to non-professional assistants to take advantage of lower hourly rates and to recognize non-billable tasks. *See* Halderman v. Pennhurst State Sch. & Hosp., 49 F.3d 939, 942 (3d Cir. 1995) (legal service rates not applicable when attorney provides services that could have been delegated); In re Worldwide Direct, Inc., 316 B.R. 637, 644 (Bankr. D. Del.2004 ) (maintaining notice list and calendar, preparing labels of creditors' addresses not services typically billed to non-bankruptcy clients and inappropriate in fee applications).

The Third Circuit notes that a bankruptcy court's paramount consideration in approving professional fees is the accepted market rate. *See* In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d at 849. "Like any sophisticated consumer of legal services, a bankruptcy court should compare the costs of equivalent practitioners of the art (including their billing structures) as well as the applicant's billing practices with equivalent clients." *See* In Worldwide Direct, Inc. 316 B.R. at 652, *citing*, Busy Beaver, 19 F.3d at 853. While Busy Beaver addressed fees incurred in a chapter 11 case, its direction applies equally as well to a chapter 13 case.

### **Reasons for Reduction**

As noted by the District Court, at the original January 7, 2015 hearing before this Court on the fee application, the Court stated that Mr. Leinbach had done "a yeoman's job in pulling these Debtors back from the brink, and correct[ing] mistakes that had been made earlier." The Court stands by that statement. However, the fact that Mr. Leinbach did a yeoman's job is not mutually exclusive with the fees that he charged being excessive.

Though the Court stated that it was "just knocking $3,000 off" of Mr. Leinbach's application and that it "didn't cut [travel time] in half," the overall fee reduction was based on both travel as well as fees that could have been delegated to a non-professional at a lower rate

and the fact that much of the litigation pursued in the case likely could have been avoided providing a greater return to the estate.

The standard "no look" fee allowed for a chapter 13 filing in this district is $3,500.00. It has been determined that this is the appropriate cost of legal services for an average chapter 13 case in this market. Mr. Leinbach charged the estate over $3,000.00 for travel alone. We recognize that Mr. Leinbach's office is relatively far from both the standing Chapter 13 trustee's office as well as the courthouse in Trenton. We further recognize that a litigant's choice of counsel must be protected. However, it is customary in Bankruptcy Court fee applications to compensate for travel hours at fifty percent (50%) of the normal hourly rate. *See* In re McDermott, 2009 Bankr. LEXIS 2667, *22 (Bankr. D.N.J. Aug. 24, 2009); In re Brooks, 2007 Bankr. LEXIS 1325, fn. 8, (Bankr. D.N.J. 2007). It is unclear if Mr. Leinbach reduced his fee for travel. His fee application contained a reduction of $1,044.00, but there is no evidence that the reduction is attributable solely to travel. Regardless, even if we were to attribute the full reduction to travel, the amount would not be sufficient. Charging for travel at the full hourly rate is excessive and this Court reduces Mr. Leinbach's fee by 50% of the travel time, or $1,500.00.

In addition to travel time, the Court's reduction was also based on its impression that Mr. Leinbach's fees were excessive. Excess fees beyond the standard "no look" fee of $3,500.00 are certainly recognized and allowed in atypical cases. In his narrative, Mr. Leinbach explains that

> "[t]he representation of the debtors entailed the preparation of two complete sets of schedules and statement [sic] of financial affairs, motion for disgorgement of fees which was granted, a motion for turnover of the debtors file from previous counsel, which was denied as moot, and appearances at the debtors creditors meeting as well as multiple confirmation hearings. That said, most of the increase above the normal workload in addition to the foregoing was due to the lack of the debtors financial records and financial statements…"

This recitation of events does not make this case atypical. Nevertheless, the Court recognizes that Mr. Leinbach was required to spend more time than the average in prosecuting this case.

That being said, many of the time entries in Mr. Leinbach's fee application are for tasks that should have been delegated to his legal assistant and charged at a lower hourly rate or to a secretary as a non-billable task. This Court finds the following tasks should have been billed at the rate of $120.00 per hour, rather than at Mr. Leinbach's rate of $360.00 per hour:

- 5/8/14  review notice to file B23 for financial management course    .1
- 5/9/14  telephone call to client to remind them to complete financial management course. [Note- Mr. Leinbach had charged .2 on the same day for another telephone call to the client regarding their need to complete the financial management course]    .1
- 5/16/14  electronically file letter to Judge Gravelle, and proposed order    .1
- 5/19/14 electronically file letter to Judge Gravelle    .1
- 5/19/14 make arrangements to appear I[sic] court call    .1
- 5/20/14 electronically file debtors revised schedules, B 22, declaration and chapter 13 plan    .2
- 5/23/15 e-mail to Bud Rockhill Re: cannot e-mail 341 docs trustees system will not accept-indicates case does not exist    .1
- 5/23/14 need P&L for time period 11/1/13-4/30/14    .1
- 6/9/14    prepare certification of service and PDF    .2
- 6/9/14     electronically file objection to the app, certification, and COS    .1
- 6/16/14  bank rankings for court called in for tomorrow    .1
- 6/20/14  TCTC re taxes done? SOFA completed? Apt next week    .1
- 7/17/14  TCTC Taxes are done and filed, has info to amend SOFA    .1
- 7/9/14   [Note- this entry was out of chronological order] Complete changes to SOFA    .1
- 8/15/14 e-mail from Jean Anderson re: need updated pay stubs    .1
- 8/15/14 e-mail from Jean Anderson, Re: insurance seduction R&B 22    .1
- 10/3/14 telephone call with client Re: information needed to amend schedules for conversion. Date   [Note- conversion granted and order entered 5/6/14, amended conversion order entered 5/28/14]    .3
- 10/6/14  TCT Shelly info needed for amended schedule need appointment to amend    .2
- 10/7/14  telephone call client questions about dates, and financial records    .2
- 10/7/14  TCF Shelly info to be provided – has it will drop off discussion of changes    .2
- 10/10/14  TCTC re questions concerning the info dropped off time for appointment, must call Gary and will call back    .2
- 10/10/14  TCFC appointment at 10:00 tomorrow ok, finish questions on info dropped off  [NOTE- Mr. Leinbach charged 4.1 hours on 10/11/14

-       to meet with the debtors to "review records, modify schedules, review financial info, etc."]   .2
- 10/11/14  PDF all documents signed by client and electronically file the same   .6
- 10/15/14  review DCF notice Reagan confirmation hearing  [NOTE- appears to be charged to wrong file]   .1
- 10/16/14  review notice of confirmation hearing unmodified plan and calendar   .1
- 10/17/14  review confirmation notice and calendar   .1
- 11/25/14  adjournment request-calendar conflict   .2
- 12/4/14    read ECF and calendar new confirmation date   .1
- 12/16/14  PDF and electronically file the application   .1
- 5/22/14   Need info transfer to daughter – college expenses and need P & L for 8/1/13-1/31/14  [NOTE- time charged at $180 per hour, which is not a rate applied to attorney or paralegal]   .2
- 7/9/14   Appointment w/ shelly review records and amend and sign   1.3
- 7/10/14 meeting with Shelley to review information provided   .5

The majority of the entries listed above would be more appropriately performed by secretarial staff and not billed directly to the client.  But, if the above tasks were charged at the paralegal rate of $120.00 per hour, instead of at the attorney rate, the total bill would be reduced by $1,608.00.

We additionally note that certain undertakings by Mr. Leinbach had the result of a cost which far exceeded the benefit to the estate.   Mr. Leinbach spent 8.7 hours objecting to the fee application of the chapter 7 trustee, charging $3,132.00 to the estate.  His objection produced a reduction of $1,925.00 in fees allowed to the chapter 7 trustee.  His time records show that the trustee contacted him to discuss settlement of his objection.  No settlement was reached; Mr. Leinbach pursued his objection, and consequently cost the estate $1,207.00, generating a loss instead of a benefit.  While an unsuccessful objection alone is not grounds for disallowing attorneys fees, a reduction in the amount is justified in this case.  We do not feel that the amount charged is commensurate with the relative simplicity of the subject matter.  Essentially, the result is that the general unsecured creditor body is paying the attorney $1,207.00, as they have lost out on that amount through the filing of the motion.

Ultimately, the Court opted to reduce Mr. Leinbach's fee application by $3,000.00 on his total bill, or $1,956.00 on the amount applied for, due to a combination of the above factors. Though the Court's calculations exceeded the $3,000.00 reduction, we chose to give Mr. Leinbach the benefit of the doubt in light of the good work he did on this case, and therefore reduced the fees awarded in this lower amount.

Very truly yours,

/s/ *Christine M. Gravelle*
United States Bankruptcy Judge

CMG:rtp
Docket